May it please the Court. Good morning. My name is Robert Phillips. I'm from Missoula, Montana. I represent Progressive Casualty Insurance Company. Your Honors, this was a declaratory judgment action that we filed in order to determine coverage available to Arlene Owen. The District Court on motion for summary judgment found that Arlene Owen was entitled to underinsured motorist coverage, which we in Montana refer to as, like most states, UIM. And as distinguished from UIM, and MedPay coverage because of her status as an officer and shareholder of the corporation. The Court found Progressive's policy to be ambiguous regarding UIM and MedPay benefits because, as the Court said, a corporation was the only name insured and a corporation cannot suffer bodily injury and cannot sustain any medical expenses. The Court also found that our coverage was illusory because of the fact that there could be no claim by the corporation for either bodily injury or medical expenses. The Court missed the issue, I think, that is really critical to this case, and that is whether the vehicle was a temporary substitute automobile. But first, to deal with the issue that the District Court ruled upon, which was the ambiguity and the alleged illusory coverage, this policy is a standard commercial automobile policy designed to be used either for corporations or individuals that are engaged in commercial enterprise. It provides underinsured motorist and medical pay to any Class II insured. By that, I mean not a named insured, but anyone who is operating a vehicle that is listed on the declaration sheet of the policy. It is, therefore, not illusory. There is significant risk that the insurer undertakes when it issues this policy. The policy language, I don't think, is subject to any two different interpretations. While the policy is complicated, it is not unclear. It makes a clear distinction between named insured and what I'll call Class II insureds or people using the vehicles. There were 12. Kennedy. You're talking about occupants of insured vehicles? Yes, sir. And you're now talking about who is the insured? Yes. Who is the insured? Which is you. Well, no. You is the named insured. Right. I'm sorry. You is the named insured, which is the company in this case. Correct. You is the insured. And as I understood the definitions of the policy, an insured could be either a person or an organization. That's correct. And specifically with regard to underinsured motorist coverage, the policy says insured means if the named insured is a person, then it means you or a resident relative or anybody else using one of the cars that's listed on the declaration sheet. If the named insured is a corporation, then it's any person using your insured car, one of the ones that's listed on the declaration sheet. So the 12 dump trucks that were owned by the business were all listed on the declaration sheet. Anyone operating those 12 dump trucks or a temporary substitute for one of those would be an insured and would be entitled to underinsured motorist or MedPay coverage. Thus the policy is clear. Arlene Owen, we acknowledge, was not a named insured, and she's only an insured if she were indeed operating a temporary substitute automobile. It's all parties acknowledge that the vehicle that they were in the process of loading at the time of her accident was not an insured car. It wasn't a vehicle listed under the terms of the progressive policy. So I think the case stands or falls on whether or not this is a temporary substitute automobile. The district court found that that was immaterial because the determined, because he determined that the policy was ambiguous or the coverage was illusory. We think that corporations are entitled to insurance just the same as individuals, and this policy provided significant coverage to the corporation even though the corporation can't sustain bodily injury. What about if we focus on that issue, which is the substitute automobile or vehicle, is there a factual issue about whether all or some of the other vehicles were unavailable and what kind of, do you need to, does she have the burden to put in the proof as to each vehicle being unavailable or being comparable for what she needed? I believe that, pardon me, Your Honor, the defendant here, Arlene Owen, does have the burden to establish that. There isn't an issue of fact on that point because if you take all of the statements, all of the affidavits and the allegations in the record below, it is insufficient to establish that we're dealing here with a temporary substitute automobile. The policy has a standard definition of temporary substitute automobile. Any auto not owned by you while you're driving it, while you're temporarily driving it, as a substitute for any other auto described in this definition because of its withdrawal from normal use due to breakdown, repairs, servicing, loss, or instruction. The memorandum that was filed by Arlene Owen in this case maybe says it best, and this is the argument that they have cobbled in order to try to establish that this is a temporary substitute automobile, and I quote, Arlene was temporarily driving Cornell's vehicle as a substitute for any other insured vehicles which were withdrawn from normal use due to breakdown, repairs, or servicing. Nowhere in the record here is there any designation of which vehicle it was that was broken down for which this truck that was a semi-truck was a substitute. Montana, as we've both pointed out. What did I just ask also? Was there also evidence in the record that other vehicle, that there were some of the insured vehicles that were not broken down or in repair? Yes. The affidavit of Curtis Owen, the president of the corporation, establishes that there were vehicles that were available for her to use. There's nothing in this record that indicates that she ever asked to use any of the insured vehicles. There's nothing in the record to indicate which of the insured vehicles she was or would have operated but for its removal. As the one of the leading cases on this point comes from Arizona, we've cited in our brief where the Arizona Supreme Court, actually Arizona Appellate Court said, a substitute automobile within the meaning of the policy is one actually but only temporarily used in place of the specified automobile. Here there's no specified automobile. And even the affidavit of Arlene Owen only goes so far as to say, at the time I was injured I did not use a vehicle belonging to my business because more than one of our vehicles was always broken down, in for repairs or being serviced. That is insufficient to trigger temporary substitute automobile coverage under the terms of this policy. There's no showing in the record here why she wasn't using one of the other vehicles that was available for use. The record discloses that this company operates dump trucks. If you look at the description of the vehicles listed on our declaration sheet, the vehicles we run are dump trucks. The vehicle that she was helping to load at the time of the accident was a flatbed semi-tractor trailer. We don't have any of those as the affidavit of Curtis Owen, President of the Corporation, indicates. Do you want to save time for rebuttal? No, Your Honor. I think I'll just go ahead and finish it. All right. The the there was no showing that the vehicle that she was loading or unloading had anything to do with the business of Bennett Owen Trucking. Bennett Owen Trucking is in the business of hauling talc, not hay. So if you use the cases that we've cited that relate to the comparison of usage, this is not a temporary substitute automobile. If you look at the need to designate a vehicle to be the one for which this was substituted, they don't satisfy that either. The district court didn't reach that issue. I submit that if the district court had reached that issue, it would have determined that this was not a temporary substitute automobile on the record that you have before you and would have determined that Arlene Owen was not therefore an insured under the terms of this policy. We think that the correct analysis would be that one, and it would lead straight through to that determination, and that coming to that determination, progressive casualty should have received judgment in its favor. We ask that you reverse the district court and enter summary judgment in favor of progressive casualty. Thank you, Your Honors. Thank you. I'll hear from Ms. Owen's counsel. Good morning. May it please the Court. I am Robert McCarthy, and I am appearing on behalf of Arlene Owen. Counsel for progressive has stated the primary issues in this case, being ambiguity of the policy and the substitute nature of the vehicle. I'd first begin by addressing why this vehicle was in fact a substitute vehicle as it was used by Arlene Owen. To begin with, Arlene Owen is an officer of the corporation. She was a 50 percent owner of the corporation. She was an employee of the corporation. The policy that was issued to Arlene Owen and Bennett Owen Trucking insured 12 vehicles. Those vehicles were four dump trucks, three bottom dumps, two dump trailers, two tractors, and one pickup truck. It also named ten drivers. Those ten drivers also included one of the co-owners of the business. Arlene Owen, as a ---- She was not listed. She was not specifically listed, but her husband, Kurt, her ex-husband was. These parties had divorced a couple of years before. But Arlene Owen certainly had a defined capacity in the business as an owner of the business. She also paid a premium for the coverage as a part owner of the business. She was, as I said, an equal owner and had authority to take actions on behalf of her corporation. The policy provisions in regards to a substitute vehicle are fairly plain and simple language. And in Montana, the ordinary meaning applies. Under Montana law, the terms of an insurance policy govern if they are clear and explicit. The language regarding a substitute vehicle here is broad and it's without limitations. Progressives ---- Oh, what vehicle was this a substitute for? This vehicle, at the time of the accident, and the record did contain submissions of DOT records regarding the vehicles being red flagged, a multitude of the vehicles on a regular basis having been red flagged and taken out of operation. There were affidavits. Well, let's just start. Was it a substitute for the tractors? It was a substitute for a vehicle which ---- A vehicle. A semi, a truck which could be operated for the purposes of moving heavy materials. Nothing in the policy defines what type of operations are ---- No, but it does say substitute. It says as a substitute for any other auto described in this definition. So substitute suggests it's not just ---- try this hypothetical. Suppose the company decided it really did want Arlene to get the license and they also wanted to expand their business, so they rented or they borrowed or somehow came into possession of a truck different from their other kinds of trucks, a flatbed truck like the one that was involved in the accident. Would that be covered by this policy? I believe it would. There's no limitation ---- Even though it wouldn't be a substitute for anything? What does the word substitute mean? Substitute means something being taken out of operation or being used for a purpose. And what the purpose was here was to drive a vehicle which she could take her driver's test, her commercial driving test in. None of the vehicles that were insured at this time would allow her to do so. They were red flagged and they wouldn't pass inspection, and that was the reason it was used as a substitute. Did she drive any of those vehicles to learn her driving skills? She did. So she's capable of driving those vehicles, whether they're red flagged or not. They're operative enough so she could practice on it. She wasn't taking this vehicle into the testing center. It's not like she borrowed it for the purpose of testing. She's just getting practice on a Sunday. In fact, her affidavit and what she attested to is that she did intend to take it in to take. But she wasn't doing it that day. Well, that day she was operating on a Sunday. There's no exclusion in the policy that she can't operate business operations on the Sabbath either. No, but you're temporarily driving it. That's the vehicle. And it's been a vehicle to broad and encompass a GMC pickup truck also. It also includes a GMC pickup truck. Well, but, see, that's the problem with this is that if you go into ñ now you're saying, well, really it's not the tractor or the semi, it's the pickup truck that it's a substitute for. So which is it? Was there a vehicle, was there any vehicle that was not broken down? I am not sure, but there's nothing within the exclusion, or within the policy that says every vehicle must be inoperable. To take that ñ No, it has to be a substitute for something. So some vehicle has to be withdrawn from use due to breakdown, repair, servicing, or loss. Yes. Which of the named vehicles were withdrawn from use? Your Honor, I can't identify the specific vehicles. Well, it matters. The affidavits that were submitted submit that there were always at least two or three vehicles that were in the shop undergoing repair. Submitted at all times. Which would mean that there were seven vehicles that were not in the shop. Sure, certainly. But nothing in the policy says that all vehicles need to be taken out of operation. If that were the case, if a fleet of a commercial trucker has a thousand vehicles and a substitution clause is included, a substitute vehicle clause is there, you would have to take all 1,000 vehicles out of operation. That doesn't make sense. The difficulty is it's a stretch. Basically, she's driving some other car, doing something totally unrelated to the business, not substituting it for the business, and so now obviously you understand that she didn't get enough insurance coverage from the other policies, but it has to relate to the language in subsection 10C of the policy in some way. Is that the language, any auto not owned by you while you were driving it as a substitute for it? Correct. Again, any other vehicle is the language. Any. Very broad. See, but it doesn't say any other vehicle which you were using in the business. It's very specific in saying as a substitute for another vehicle, it's unavailable because of breakdown and so forth. And it doesn't sound like this was being driven as a substitute for any particular vehicle. It sounds like she wanted to learn a different kind of truck, which is the same thing. No, actually she's a corporate officer who made a business decision to obtain her license. But it doesn't say. It doesn't say for something used in the business. It says for something used as a substitute for another auto which is unavailable. And we've asked you three times, what's the other auto? The auto is a truck. It's a truck that is capable of passing inspections so that she can take her driver's exam to obtain her commercial driver's license. That's exactly what the substitution is. Under Montana law, and this is a Montana case, Montana's public policy applies, and Montana law regarding the interpretation of the plain and usual meaning of the language should apply. Nothing in the policy says that the fleet of 12 vehicles has to be completely out of service. The deck sheet is also part of the policy. It names these wide-ranging vehicles. They need to be withdrawn from service, from normal use. That they need to be done. And then the due to relates to. So first you have to have automobiles that are withdrawn from normal use. And so I asked you, as of that time, which autos or vehicles were withdrawn from normal use. We believe two of the dump trucks. Two dump trucks were withdrawn from normal use. And so this was a substitute for a dump truck. A dump truck, yes. Or another commercial vehicle that was used in the business. Yes. The policy doesn't address the business purpose or attempt to define any of the areas of intended use. But it is clear that Arlene Owen, as the owner, as an officer, a shareholder, was pursuing an interest that she had in attempting to reduce the expenses and costs of the business. This isn't the case where we have a large corporation. We have a small corporation and the policy is issued to this small business. There's two owners. It's an ex-husband and the ex-wife. The vehicle that, in applying the substitute vehicle provision, has to be under the control of Arlene Owen. The vehicle was under the control of Arlene Owen. She drove it to the site where the accident occurred. She intended to drive it back. The affidavits are submitted by Arlene Owen and by Craig Cornell. And, again, I'd submit that the vehicle that is being substituted is a substitution of one vehicle that could not pass the inspection so that she could obtain her driver's license for a vehicle that could pass the inspection. And at the time that the accident occurred, there were at least two vehicles that were in the shop, according to the mechanic who worked on the vehicles. And to Arlene Owen, who was the owner of the business. This is a contract for adhesion that designates the name insured as a corporation. Under these circumstances, it must reasonably contemplate that the individuals who will act for the corporation will determine what is an appropriate action by the corporation. This would be what an insured corporation would also reasonably expect, especially when the corporation is a small family business. The attempt by Progressive to say that the policy requires every vehicle to be out of service is ridiculous in a commercial policy. Every vehicle is separately insured. There's a premium paid for each vehicle that is there. So if one vehicle is taken out due to breakdown or the need for the repairs that were done, as is the case in this matter, then any vehicle that is used for a legitimate corporate purpose should obtain that coverage, the substitution. She is an insured owner, shareholder, director, and officer of this corporation. So under your theory, if there was a diesel fuel delivery truck that was a named vehicle and insured under the policy, and it was in the shop, and then there's nine other trucks and they're out and about and not in the shop, and she went out and rented a car or borrowed just a car from a friend, it could be a substitute vehicle because there's no definition of what's a substitute vehicle vis-à-vis the original vehicle. I think the first consideration is, is it a legitimate business purpose of what she's doing? Well, where does it say that? It's, I mean, I think that's a general policy consideration. But you're telling me that we should read the policy literally. Does it say that? Under your theory, it seems to me she could just go out and borrow her neighbor's passenger car and then say, well, we had this one diesel fuel truck in the shop, therefore, this is a substitute vehicle, because I couldn't certainly drive that diesel truck because it was in the shop on Sunday. So I drove my neighbor's car and, you know, ran it off the road accidentally, and I should be now insured by Owens Trucking Insurance Company. I think that's. What would be wrong with that? I think it's taking it a little bit further than I'm attempting to argue. I'm saying that this is a commercial vehicle, a large truck that requires DOT licensing and certification to drive, and that's what was done here, was that type of substitute. But I'm also saying that the policy is. So the truck she borrowed was more than a 10,000 gross weight truck that requires DOT certification? The interesting thing that we have here is the policy. Well, yes or no, was it more than 10,000? I believe all of the trucks were, yes. They required DOT certification, and that's what was used at this time. But the most important thing is the policy itself is absolutely silent about these matters. It's not fair. It's not addressed. Okay. I think we've extended your time a fair amount, and we have your point in mind. Thank you very much. Thank you. The case just argued of progressive casualty versus Owen is submitted.
judges: McKeown, Clifton, Schwarzer